[Cite as *Perrysburg v. Steele*, 2021-Ohio-1905.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio/City of Perrysburg 　　　　Court of Appeals No. WD-20-043

　　　Appellee 　　　　　　　　　　　Trial Court No. TRC1905386

v.

Karen S. Steele 　　　　　　　　　　**DECISION AND JUDGMENT**

　　　Appellant 　　　　　　　　　　Decided: June 4, 2021

* * * * *

Dan Weiss, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Karen Steele, appeals her conviction following a jury trial in the Perrysburg Municipal Court of one count of operating a vehicle under the influence ("OVI") in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and one count of operating a vehicle without reasonable control in violation of R.C. 4511.202, a minor misdemeanor. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} On August 18, 2019, appellant was charged with operating a vehicle under the influence, and operating a vehicle without reasonable control. A jury trial was held on the OVI charge on March 4, 2020.[1] The following testimony was presented during the trial.

{¶ 3} Lake Township Police Officer Mick Lento testified that at approximately 4:30 p.m. on August 18, 2019, he was stopped at a stop sign on Bradner Road at the intersection with Woodville Road in Lake Township, Wood County, Ohio. Lento observed appellant's car approaching on Woodville Road when the car attempted to make a right turn onto Bradner Road. The car did not make it around the corner, but instead ran over a stop sign, went over a culvert, and proceeded down into a ditch. The car drove at an angle along the ditch for about 200 feet before it drove out of the ditch and onto the road. Lento activated his lights and sirens and followed the car. The car did not stop immediately, but proceeded down Woodville Road and made a left turn onto Walbridge Road where the car stopped in the middle of the road.

{¶ 4} Lento approached the stopped car and asked for appellant's driver's license. Appellant asked what the problem was. Lento responded that appellant just ran over a stop sign and drove into a ditch. According to Lento, appellant replied that she did not hit anything and that she did not have any damage to her car. Lento testified that

---

[1] Because the offense of operating a vehicle without reasonable control in violation of R.C. 4511.202 is a minor misdemeanor, it was not presented to the jury.

appellant was so confused that it took her approximately six to eight minutes for her to give him her driver's license, explaining that every time she reached for her license she asked Lento why he stopped her and what was happening. Lento observed that appellant had slurred words, her eyes were glassy and blood shot, and she was argumentative and confused. Lento testified, however, that he had a head cold and thus was not able to detect an odor of alcohol. At that point, Lento called two other officers to see if they could detect any odors.

{¶ 5} Lento also testified that appellant's mother was in the passenger's seat and appeared confused. Appellant's mother did not make any statements.

{¶ 6} On cross-examination, Lento acknowledged that after he convinced appellant that she was in an accident, appellant informed him that her mother had Alzheimer's and was grabbing at the steering wheel, which is what caused appellant to miss the turn and get into the accident. Lento also acknowledged that his accident report did not include any information regarding his observations of appellant's slurred speech or glassy, bloodshot eyes, nor did it mention appellant's denial that an accident occurred. However, on redirect, Lento explained that the other officers pursued the OVI investigation, and his report was limited to the accident only.

{¶ 7} The state next called Lake Township Police Officer Jordan Grosjean, who was one of the officers that responded to the scene following the call from Lento. Grosjean testified that he spoke with appellant while she was still in the driver's seat of her car. Grosjean described that appellant was hesitant in answering his questions, and

3.

did not look at him, but instead looked down at the center console. Grosjean asked appellant where she was going, and she responded that she was coming from her home and was heading to a festival. However, appellant could not say where the festival was located, and Grosjean observed that she did not have a phone or GPS device to help her get to the location. Grosjean then asked appellant to count backwards from 36 by twos. Appellant was unable to count backwards by twos, and the numbers she was saying were out of order. Grosjean then asked appellant to step out of the vehicle. When appellant stepped out, Grosjean noticed a faint odor of alcohol.

{¶ 8} Once out of the vehicle, Grosjean performed three standard field sobriety tests. The first was the Horizontal Gaze Nystagmus test, from which Grosjean observed six out of six indicators that appellant was impaired. The second test was the Walk-and-Turn, which appellant was unable to successfully complete. Appellant was instructed to take nine steps heel to toe in a line, then turn around and take nine steps back. Appellant took four steps before she completely stepped off of the line, and ultimately took 21 steps not heel to toe before turning around. The final test was the One-Legged Stand, which again appellant was unable to successfully complete. Appellant made five or six attempts to lift her foot off of the ground and gain her balance before successfully balancing on one foot. Based upon all of his observations, Grosjean concluded that appellant was under the influence of alcohol and placed her under arrest.

{¶ 9} At the point that Grosjean placed appellant under arrest, appellant became highly upset and claimed that Grosjean was scaring her mother, who suffered from

4.

Alzheimer's. Grosjean noted that appellant's mother had been sitting calmly in the passenger seat of appellant's car the whole time. Nonetheless, Grosjean undid appellant's handcuffs and allowed her to bring her mother with her to the back of Grosjean's patrol car. Grosjean informed appellant that he would transport them to the police station where she would be served with notice of the charges, and then he would transport them home.

{¶ 10} As they left, Grosjean began to take appellant to the Northwood Police Department where a breathalyzer test could be conducted. Appellant, however, stated her refusal to take the breathalyzer test, and maintained that refusal even when Grosjean informed her that her refusal would result in an administrative license suspension. Therefore, Grosjean transported appellant and her mother directly to the Lake Township Police Station, and placed them in an interview room while he filled out the OVI paperwork. While in the interview room for approximately 30 to 45 minutes, appellant attempted to coax her mother to get up and leave with her, and also tried to coax her mother to say that one of the officers had grabbed her by the throat during the traffic stop. Finally, after serving appellant with the OVI paperwork, Grosjean contacted appellant's sister who transported appellant and her mother home.

{¶ 11} The final witness to testify for the state was Lake Township Police Officer Ryan Kohlhofer. Kohlhofer spoke with appellant at the scene while appellant was still in the driver's seat of her car. Kohlhofer testified that appellant did not seem to remember that she had hit a stop sign. He described appellant as a little agitated, and he detected a

5.

faint odor of alcohol on her breath and noticed that her eyes were glassy. Kohlhofer also testified that he observed appellant as she performed the field sobriety tests, during which he noticed that appellant lacked balance and coordination.

{¶ 12} Following the testimony from Kohlhofer, the state rested. Appellant then moved for an acquittal pursuant to Crim.R. 29, which the trial court denied. Appellant then testified in her own defense.

{¶ 13} Appellant testified that her mother had Alzheimer's and that she was the primary caretaker for her mother. On the day of August 18, 2019, appellant was driving her mother to pick up her aunt and go to a festival when her mother became confused and grabbed the steering wheel of the car, thinking that appellant had missed a turn. That is when appellant lost control of the car, ran over the stop sign, and went into the ditch.

{¶ 14} Appellant testified that when she spoke with the police officers she was beside herself, and was upset about what had just happened to the point that it made it difficult for her to concentrate and follow directions. Appellant denied that she failed to recognize that she had just been involved in an accident. Appellant stated that her only concern was her mother, and she wanted to make sure that her mother was okay and wanted to get her home. Appellant testified that being upset also influenced her decision not to take the breathalyzer test, and that in hindsight she should have taken the test. Finally, as to the field sobriety tests, appellant explained that she was on disability for a back injury, which impaired her ability to perform those tests.

{¶ 15} The final witness to testify was appellant's sister, Lynn Kontak. Kontak testified that appellant's mother suffers from Alzheimer's. Kontak explained that the mother will sometimes act erratically. Kontak recounted one instance where Kontak's oldest daughter had taken appellant's mother to eat lunch. While the daughter was in the restaurant getting the food, appellant's mother climbed into the driver's seat and the car started moving forward. After Kontak's daughter was able to stop the car, appellant's mother acted calmly, as if nothing had happened.

{¶ 16} Following the closing statements and instructions from the trial court, the jury retired to deliberate. Thereafter, the jury returned with a verdict of guilty on the count of OVI. The trial court separately found appellant guilty of operating a vehicle without reasonable control. The court then continued the matter for preparation of a presentence investigation report.

{¶ 17} At the sentencing hearing on June 2, 2020, the trial court sentenced appellant to a term of 180 days in the Wood County Justice Center. The trial court suspended 80 of those days, and ordered that of the remaining 100 days, 90 would be served on electronic home monitoring.

## II. Assignments of Error

{¶ 18} Appellant has timely appealed her judgment of conviction, and now asserts two assignments of error for our review:

1. The evidence was insufficient for the court to deny appellant's Crim.R. 29(A) motions and the jury to find the appellant guilty.

7.

2. The jury's guilty decision was against the manifest weight of the evidence.

### III.  Analysis

{¶ 19} At the outset, we note that the arguments in appellant's brief pertain only to her OVI conviction, thus we will not address whether her conviction for operating a vehicle without reasonable control in violation of R.C. 4511.202 is based on insufficient evidence or is against the manifest weight of the evidence.

{¶ 20} In her first assignment of error, appellant challenges the sufficiency of the evidence to support her conviction both as it relates to the trial court's denial of her Crim.R. 29 motion for acquittal and the jury's guilty verdict.

{¶ 21} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 22} Here, appellant was convicted of operating a vehicle under the influence in violation of R.C. 4511.19(A)(1)(a), which states, "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the

8.

following apply: (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶ 23} In support of her assignment of error, appellant argues that she testified at trial consistently with what she told the officers at the scene, which was that the accident was caused when her mother unexpectedly grabbed the steering wheel. Appellant concludes that when faced with this explanation, no rational juror could have found beyond a reasonable doubt that alcohol was the cause of the accident.

{¶ 24} We are not persuaded by appellant's argument. First, appellant's argument improperly obfuscates what the state is required to prove. The state was not required to prove the cause of the accident. Instead, the state was only required to prove that appellant operated the motor vehicle while under the influence of alcohol. Second, the evidence, when viewed in the light most favorable to the prosecution, was sufficient to support appellant's conviction. Here, the evidence included appellant's erratic operation of her vehicle, her denial that she was in an accident, her inability to produce her driver's license in a timely manner, her slurred speech, her glassy eyes, the faint odor of alcohol, the presence of six out of six indicators on the Horizontal Gaze Nystagmus test, and her failure to successfully complete the Walk-and-Turn test and the One-Legged Standing test. From this evidence, we hold that a rational trier of fact could have found her conviction for OVI proven beyond a reasonable doubt.

{¶ 25} Accordingly, appellant's first assignment of error is not well-taken.

9.

{¶ 26} In her second assignment of error, appellant argues that her conviction is against the manifest weight of the evidence. A claim that a jury verdict is against the manifest weight of the evidence requires an appellate court to act as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In so doing, the appellate court,

> reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id.*

{¶ 27} As with her first assignment of error, appellant argues that there is conflicting evidence about the cause of the accident. Appellant asserts that while the state presented evidence that she did not pass certain field sobriety tests, it did not prove that her alleged impairment, and not her mother grabbing the steering wheel, caused the accident. Thus, appellant concludes that the jury clearly lost its way when it found appellant guilty despite this conflicting evidence.

{¶ 28} Again, we note that the jury was not required to find that alcohol caused the accident; it was only required to find that appellant operated the vehicle while under the

10.

influence of alcohol. Having reviewed the record, we find that this is not the exceptional case where the evidence weighs heavily against the conviction. As discussed in appellant's first assignment of error, the officers testified to numerous physical indicia of impairment, and even appellant acknowledges that she did not pass the field sobriety tests. Therefore, we hold that the jury did not clearly lose its way when it found appellant guilty of OVI, and thus appellant's conviction is not against the manifest weight of the evidence.

{¶ 29} Accordingly, appellant's second assignment of error is not well-taken.

## IV. Conclusion

{¶ 30} For the foregoing reasons we find that substantial justice has been done the party complaining, and the judgment of the Perrysburg Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       _____
                                          JUDGE

Thomas J. Osowik, J.      

                                  _____
Myron C. Duhart, J.                       JUDGE
CONCUR.

                                  _____
                                          JUDGE

11.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.